UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-80758-MD

SAK LIQUIDATION, LLC.,

Plaintiff,

v.

CARGO RISK CONSULTING, LLC, *et. al*,

Defendants.

_____________________________________/

**ORDER ON MOTION FOR JURISDICTIONAL DISCOVERY**

Plaintiff, SAK Liquidation, LLC ("SAK"), filed a Motion for Jurisdictional Discovery, ECF No. 79, seeking discovery to establish the Court's personal jurisdiction over Defendant Fredrikson & Byron, P.A. ("FB"). FB filed a Response opposing the Motion, ECF No. 81, and SAK filed a Reply. ECF No. 82. U.S. District Judge Melissa Damian referred the Motion to me for appropriate disposition. ECF No. 71. For the reasons discussed below, the Motion is GRANTED IN PART AND DENIED IN PART.

Jurisdictional discovery is limited to facts that became genuinely disputed because of evidence proffered in support of a Rule 12(b)(2) motion to dismiss. *In re Zantac (Ranitidine) Prods. Liab. Litig.,* 706 F. Supp. 3d 1363, 1367 (S.D. Fla. 2020). Jurisdictional discovery is not permitted "solely to remedy a lack of jurisdictional

facts or an insufficient pre-filing investigation." *Id.* at 1367-68. For purposes of Rule 12(b)(2), facts asserted in a complaint are accepted as true unless controverted by a defendant's evidence. *Morris v. SSE, Inc.,* 843 F.2d 489, 492 (11th Cir. 1988).

In its Motion to Dismiss, FB proffered jurisdictional facts only in the Declarations of Patrick Kelly, ECF Nos. 57-1 and 62-2, and the Declaration of Richard Richards. ECF No. 62-1. Jurisdictional discovery, if any, should be limited to facts asserted in these declarations that create a genuine dispute with facts alleged in the First Amended Complaint.

The Court's Case Management Order, ECF No. 75, specified that any motion for jurisdictional discovery should identify the genuinely disputed facts at issue, and what specific discovery is being requested. In response, the Motion seeks:

> (i) all communications between or among [Sonny Joe] Sanders, [Tim] Lord and Kelly that mention or relate to Teras, its creditors, or its bankruptcy between January 1, 2019 and December 31, 2022, regardless as to whether the advice was sent to a TrueNorth email address or invoiced under a TrueNorth billing code; and ii) limited three hour depositions of Lord, Sanders and Kelly regarding their communications during the same time.

ECF No. 79 at 4. SAK says the disputed facts for purposes of personal jurisdiction include Mr. Kelly and FB's involvement in the Teras Debtors' Florida bankruptcy proceedings and their advice to the Teras Debtors and the True North Entities during and regarding those proceedings. *Id.*

SAK argues that FB partner Mr. Kelly "masterminded" a scheme and served as chief legal advisor for the Teras Debtors[1] to transfer their assets to the True North Entities.[2] The Amended Complaint alleges that Mr. Sanders controlled the Teras Debtors and True North Entities, and sought to improperly avoid paying the Teras Debtors' debts by diverting the Teras' Debtors assets to the True North Entities, Teras insiders, and himself. ECF No. 51 at 1.

Relevant to personal jurisdiction, SAK alleges that FB, a Minnesota law firm with no offices or other connections to Florida, through Mr. Kelly, advised the Teras Debtors to relocate to Florida and seek bankruptcy protection in Florida. The Motion asserts that FB extensively advised the Teras Debtors and related individuals including Mr. Sanders, the owner and CEO of the Teras Debtors and True North Entities; Mr. Lord, an officer and general counsel of the Teras Debtors and the True North Entities; and Katie McFadden, CFO of the Teras Debtors and True North Entities; from 2016 through 2019 on creditor claims, insolvency issues, and bankruptcy strategy, then "continued to provide the same insolvency and creditor advice to Sanders under the guise of advising TrueNorth instead of Teras." ECF No. 79 at 2–3. According to SAK, FB was heavily involved during the bankruptcy and

[1] Teras Cargo America, LLC ("Teras America"), Teras Cargo Transport America, LLC ("TCTA") and Teras Breakbulk Ocean Navigation Enterprises, LLC ("TBONE") comprise the Teras Debtors.

[2] The True North Entities consist of True North Operations Group LLC, True North Projects LLC, True North Energy Systems LLC, True North Transport LLC, and True North Transport America LLC. ECF No. 51 at 1, 33.

that it continued advising the Teras Debtors while the True North entities paid the legal bills. *Id.* at 3.

FB responds that it has already provided its files relating to the Teras Debtors to SAK, and Florida-based attorney Richard Richards has produced his file relating to the Teras Debtors. ECF No. 81 at 3. FB argues that those files are sufficient for SAK to determine that FB has no connection to Florida and the Court cannot exercise personal jurisdiction over it. *Id.* FB further argues that SAK seeks privileged communications to which it not entitled between FB and the True North Entities, as SAK has no ownership interest in the True North Entities. *Id.* at 4. Finally, FB argues that if any jurisdictional discovery is granted, it should be limited, at most, to a deposition of Mr. Kelly covering solely the statement in his declarations. *Id.*

In its Reply, SAK argues that FB failed to establish that Mr. Kelly's communications with Mr. Sanders and Mr. Lord about the Teras Debtors are privileged. ECF No. 82. SAK contends that the Teras Debtors and True North Entities are alter egos and the corporate veil should be disregarded, and that any privilege has already been waived.

The disputed issues are relevant to the pending motion to dismiss for lack of personal jurisdiction. Neither party cited any legal authority about whether a Florida court has personal jurisdiction over an out-of-state lawyer who advises a client regarding a Florida matter. ECF Nos. 79, 81, 82. However, FB's level of involvement in the bankruptcy proceedings may impact whether this Court has personal jurisdiction over FB. *See, e.g., Tufts v. Hay*, 977 F.3d 1204, 1212 (11th Cir. 2020)

(personal jurisdiction proper where out-of-state lawyer made "repeated misrepresentations" that caused Florida lawyers to perform unauthorized work); *Am. Torch Tip Co. v. Dykema Gossett PLLC*, 2011 WL 3171811 (M.D. Fla. July 8, 2011) (no jurisdiction over out-of-state lawyer who communicated with client in Florida and made two trips to Florida while working on an out-of-state matter); *ASI Diamonds, Inc. v. Allianz Versicherungs-Aktiengesellschaft*, 2018 WL 8193867 (S.D. Fla. Aug. 16, 2018) (no personal jurisdiction over out-of-state lawyers who represented a Florida company in an insurance dispute that company argued should have been brought in Florida); *Robinson v. Gianmarco & Bill, P.C.*, 74 F.3d 253 (11th Cir. 1996) (court had personal jurisdiction over out-of-state lawyers who negligently drafted will and trust documents intended to be administered in Florida).

I decline to pre-emptively and categorically rule on whether a privilege exists over communications between FB and persons or entities other than the Teras Debtors. SAK is arguing four theories why bankruptcy-related communications between FB and Saunders and Lord are not privileged: (1) alter ego, (2) piercing the corporate veil, (3) joint representation, and (4) waiver.[3] FB bears the initial burden of establishing that a privileged relationship exists. *United States v. Noriega*, 917 F.2d 1543, 1550 (11th Cir. 1990). SAK bears the burden of showing an exception to

[3] I am aware that in a related case, *Versant Funding LLC v. Teras Breakbulk Ocean Navigation Enterprises, LLC*, No. 17-CV-81140, 2025 WL 1440350 (S.D. Fla. May 13, 2025), Judge Matthewman concluded that any privilege regarding emails from a True North email archive was waived. That decision is not binding in this case because it is procedurally and factually different. Nevertheless, I agree with the legal analysis in that decision.

the privilege. *United States v. Patel*, 509 F. Supp. 3d 1334, 1340 (S.D. Fla. 2020); *James Hardie Bldg. Prods., Inc. v. GSE Dev. Corp.*, No. 03-CV-21168, 2005 WL 8155864, at *3 (S.D. Fla. Aug. 25, 2005). Different analyses may apply depending on parties to, and substance of, a particular communication. The better practice is to have FB assert the privilege on a document-by-document or question-by-question basis. *See United States v. Moore, Ingram, Johnson & Steele, LLP*, No. 21-10341, 2022 WL 3134374, at *4 (11th Cir. Aug. 5, 2022).

In sum, I find that SAK is entitled to limited jurisdictional discovery only into FB's role, if any, in the bankruptcy filing(s) and in the bankruptcy proceedings, including relevant, non-privileged communications with Mr. Saunders and Mr. Lord. FB is not entitled to discovery into communications unrelated to the bankruptcies.

WHEREFORE, it is **ORDERED** that SAK's Motion for Jurisdictional Discovery is **GRANTED IN PART AND DENIED IN PART** as follows:

1. SAK is permitted to take the deposition of Patrick Kelly, with a time limitation of three hours on the record. FB may assert privilege objections on a question-by-question basis.
2. On or before **May 22, 2026**, FB shall produce all documents in its possession, custody, or control that reflect communications between and among Mr. Sanders, Mr. Lord, and Mr. Kelly related to the Teras Entities' decision to file for bankruptcy and/or the subsequent bankruptcy proceedings. If FB asserts that responsive documents are privileged, it shall serve a privilege log that complies with Local Rule 26.1(e).

3. SAK and FB shall confer and mutually agree on a date, time, and place for the deposition, with the deposition to take place on or before **June 2, 2026**.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 12th day of May 2026.

BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE